DECISION AND JUDGMENT ENTRY
This is an appeal from a Scioto County Common Pleas Court summary judgment in favor of the Scioto County Joint Vocational School (SCJVS) and Ralph Madden, defendants below and appellees herein.
William M. Sharp, plaintiff below and appellant herein, raises the following assignment of error for review:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FINDING THERE WAS NO GENUINE ISSUE AS TO ANY MATERIAL FACT AND THAT THE APPELLEE WAS ENTITLED TO A JUDGMENT AS A MATTER OF LAW."
Our review of the record reveals the following facts pertinent to the instant appeal. During the 1997-1998 school year, appellant was a student in Madden's carpentry class at SCJVS. On October 17, 1997, while in Madden's carpentry class, appellant and Chris Cornell, another student, were cutting a one-by-twelve-inch pine board into four-inch sections. To cut the wood, appellant and Cornell used a table saw.
Cornell pushed the wood through the saw and appellant stood to the side of the saw, pushing against the left side of the wood to help the wood progress through the saw in a straight line. As appellant pushed the board, his right hand slipped over the wood and into the saw blade. As a result, appellant injured his right middle finger.
On October 18, 1999, appellant filed a complaint against appellees. In his complaint, appellant alleged that (1) appellees negligently maintained a safety device on the table saw; and (2) appellees failed to properly train or to supervise appellant. Appellant subsequently filed an amended complaint that further alleged that appellant's injury was caused by appellees' bad faith, wantonness, and recklessness. Appellees denied liability on the basis of sovereign immunity.
On November 1, 2000, appellees filed a motion for summary judgment. Appellees asserted that appellant's injury resulted from a discretionary act and that no evidence exists that appellees acted maliciously, in bad faith, or wantonly or recklessly. Appellees attached to their motion Madden's affidavit. In the affidavit Madden stated that he: (1) taught appellant how to use the table saw; (2) required the students to show that they knew how to use the table saw prior to operating it; (3) required the students to sign a sheet indicating that they had seen the demonstration process on how to operate the table saw; and (4) required the students to hand write the safety rules for operating a table saw, as contained in the course textbook.
Appellant countered that genuine issues of material fact remained as to whether appellees acted wantonly or recklessly by failing to properly train appellant in the use of the table saw and in failing to properly maintain the table saw. To support his argument, appellant referred to the depositions taken of appellant, two fellow students, and Madden.
In his deposition, appellant explained that he received little training regarding the safe and proper operation of the table saw. Appellant stated that there was not "any sort of information [he] had to receive or teacher-related things that [he] had to undergo before [he was] able to use the table saw." Appellant stated that the only training he received regarding the use of the table saw was to use a "push stick" and to wear safety goggles.
Appellant stated that he was not given any demonstration regarding the proper use of the table saw before he was allowed to use the saw. Appellant further stated that he did not remember a teacher supervising his first use of the table saw.
Appellant further stated that Madden did not require the students to read any safety guidelines concerning the table saw. Appellant admitted that Madden provided the students with a textbook, but he noted that "we didn't work out of the book very often."
Appellant explained that his injury occurred approximately one and one-half months after he began the class and that he had operated the table saw approximately fifty times prior to his injury. Prior to his injury, however, appellant had noticed problems with the saw. Appellant explained: "The fence would come out of adjustment because it was bent somewhat. If you'd run a two-by-four underneath the guard and then run a piece of plywood, the guards would still stick up." Consequently, appellant noted that the adjustment would not always be straight and that "to get it perfect," one had to hold the board against the fence from the side. Appellant stated that he had informed Madden about the problem.
Appellant's fellow student, Chris Cornell, stated in his deposition that before the students could use the table saw, the senior students demonstrated the proper use of the table saw. Cornell stated that the students did not receive any safety rules regarding the use of the table saw until after appellant's injury. Cornell explained that after appellant's injury, the students watched movies about safety and were required to copy the safety rules out of the textbook.
Cornell, who was working with appellant on the table saw when the injury occurred, opined that appellant's injury resulted from the saw blade being so dull that it made appellant push harder than should have been necessary. Cornell stated that when appellant was injured, the guard on the blade "flipped up."
David Page, another of appellant's fellow students, stated in his deposition that Madden did not provide the students with any formal training regarding the use of the table saw. Page stated that the only training Madden provided was to ask each student if the student knew how to use the table saw. Like Cornell, Page stated that after appellant's injury, Madden required the students to write the safety rules concerning the use of the table saw.
Page further stated that it was difficult to lock the fence on the saw. Page explained that when the fence was not fastened properly, the board would not run along a straight edge. Page stated that ordinarily one should not stand to the side of the table saw, but that sometimes it became necessary "[i]f the fence was wobbly or the fence had worked loose, as it often did." Page stated that he knew of several people who had informed Madden of the problem with the fence. After appellant's injury, the fence problem was corrected.
In his deposition, Madden stated that before he allowed the students to use the table saw, he required each student to sign a sheet acknowledging that they knew the appropriate safety precautions. Madden also stated that he required the students to write the safety rules.
Madden explained that the table saw was a twenty-year-old machine and that the fence probably had a little give to it. Madden stated that the saw was not "a hundred percent." Madden admitted that because of the condition of the fence, a board progressing through the saw had a potential not to stay straight. When asked whether he had ever seen any student using their hands to steady the board against the fence, Madden replied: "It wasn't-it wasn't taught that way and I never did see many people ever do it that way."
On February 27, 2001, the trial court granted summary judgment in appellees' favor. Appellant filed a timely notice of appeal.
In his sole assignment of error, appellant argues that the trial court erred by granting appellees summary judgment. In particular, appellant contends that the trial court erred by determining that no genuine issues of material fact remained for resolution at trial regarding whether appellees acted wantonly or recklessly. Appellant asserts that genuine issues of material fact remain as to whether the students received proper instruction regarding the use of the table saw. Appellant argues that the conflict between the teacher's and the students' deposition testimony regarding the amount of training the students received prior to operating the table saw creates a genuine issue of material fact. Appellant further asserts that genuine issues of material fact remain as to the condition of the table saw. Appellant notes that he and his fellow students stated in their depositions that the machine was old, had a dull blade, contained insufficient guards, and had wobbly fencing. Appellant further notes that even the teacher admitted that the machine was not "a hundred percent." Appellant also notes that he and Page stated that the problems with the table saw had been reported to the teacher.
Initially, we note that when reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts ade novo review. See, e.g., Doe v. Shaffer (2000), 90 Ohio St.3d 388,390, 738 N.E.2d 1243, 1245; Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241, 245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704,711, 622 N.E.2d 1153, 1157; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-12, 599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164, 1171.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273; Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.
After our review of the record in the case sub judice, we agree with appellant that genuine issues of material fact remain as to whether liability may attach to appellees.
R.C. Chapter 2744, the Political Subdivision Tort Liability Act,[1]
absolves political subdivisions of tort liability, subject to certain exceptions. See Cater v. Cleveland (1998), 83 Ohio St.3d 24, 28,697 N.E.2d 610, 614-15; Franks v. Lopez (1994), 69 Ohio St.3d 345, 347,632 N.E.2d 502, 504; see, also, Helton v. Scioto Bd. Cty. Commrs. (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841, 843. Whether a political subdivision is entitled to statutory immunity under Chapter 2744 presents a question of law for the court's determination. Conley v.Shearer (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862, 869; see, also,Feitshans v. Darke Cty. (1996), 116 Ohio App.3d 14, 19, 686 N.E.2d 536,539.
R.C. 2744.02(A)(1) sets forth the general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
R.C. 2744.02(B) contains certain exceptions to the general rule of non-liability. Relevant to the case at bar, R.C. 2744.02(B)(4) provides:
 Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or an of its employees in connection with a governmental or proprietary function, as follows:
* * * *
 (4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function.
If an R.C. 2744.02(B) exception applies, the political subdivision will be liable, unless one of the defenses contained in R.C. 2744.03
"re-absolves" the political subdivision of immunity. See, generally,Hallett v. Stow Bd. of Edn. (1983), 89 Ohio App.3d 309, 313,624 N.E.2d 272, 274; Howell v. The Union Township Trustees (Mar. 18, 19997), Scioto App. No. 96 CA 2430, unreported.
R.C. 2744.03 specifies certain defenses a political subdivision may assert to defeat a claim that it is liable under one of the R.C. 2744.02(B) exceptions. Relevant to the case at bar, R.C. 2744.03(A)(5) and (6) provide:
 In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
* * *
 (5) The political subdivision is immune from liability if the injury, death or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division, the employee is immune from liability unless one of the following applies:
* * * *
 (b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.
In the case at bar, the parties do not dispute that appellees, a political subdivision and an employee of the political subdivision, are entitled to the R.C. 2744.02(A)(1) general grant of immunity. The parties also do not dispute that R.C. 2744.02(B)(4) applies to impose liability and that appellant's injury occurred as a result of appellees' exercise of discretion, as contemplated in R.C. 2744.03(A)(5). Appellant and appellees dispute, however, whether genuine issues of material fact remain as to whether appellees' conduct was wanton or reckless so as to remove the liability exemption R.C. 2744.03(A)(5) and (6) otherwise would provide.
The Ohio Supreme Court has defined reckless conduct as follows:
 "[Reckless conduct is conduct that] was committed `"knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."' Marchetti v. Kalish
(1990), 53 Ohio St.3d 95, 96, 559 N.E.2d 699, 700, fn. 2, quoting 2 Restatement of the Law 2d, Torts (1965) 587, Section 500."
Cater, 83 Ohio St.3d at 33, 697 N.E.2d at 618. "Wanton conduct involves the failure to exercise `"any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under the circumstances in which there is great probability that harm will result."'" Gladon v.Greater Cleveland Regional Trans. Auth. (1996), 75 Ohio St.3d 312, 319,662 N.E.2d 287, 294 (quoting McKinney v. Hartz Restle Realtors, Inc. (1987), 31 Ohio St.3d 244, 246, 510 N.E.2d 386, 388, quoting Hawkins v.Ivy (1977), 50 Ohio St.2d 114, 363 N.E.2d 367, syllabus).
Whether an individual acted recklessly or wantonly ordinarily is a question for the jury. See Fabrey v. McDonald Village Police Dept. (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35; Wagner v. Heavlin
(2000), 136 Ohio App.3d 719, 730, 737 N.E.2d 989, 998. If, however, no evidence exists to support a finding of recklessness or wantonness, summary judgment is appropriate. See Fabrey.
In Cater, the court found that genuine issues of material fact remained as to whether a political subdivision acted recklessly when the evidence demonstrated that the governmental entity failed to train its lifeguards to use a swimming pool facility's phone lines in order to call 911.
In Charles v. Cardington-Lincoln Loc. Sch. Dist. (Aug. 19, 1996), Morrow App. No. 821, unreported, the court concluded that genuine issues of material fact remained as to whether the political subdivision acted wantonly or recklessly when some evidence existed that the political subdivision and its employee failed to properly maintain a table saw and to properly instruct the students regarding the use of the table saw. Some evidence existed that the political subdivision and its employee failed to: (1) equip the blade with a lower blade guard; (2) maintain a clean, sharp blade; (3) maintain the saw in such a manner so the front end of the saw is slightly higher than the rear end in accordance with installation instructions; (4) maintain the fence/bridge in a safe, appropriate manner; and (5) adequately instruct the student on the use of the saw. The court stated that the foregoing evidence, "taken as a whole, is sufficient to create a jury question as to the overall determination of whether [the defendants] acted in a wanton or reckless manner with regard to the saw in question."
In Goodin v. Alexander Loc. Sch. Dist. (Mar. 26, 1993), Athens App. No. 92 CA 1531, unreported, we concluded that no genuine issues of material fact remained as to whether the teacher or school district acted recklessly or wantonly when the evidence revealed that: (1) the table saw lacked a blade guard; and (2) the teacher provided extensive instruction on the safe use of the machinery.
Based upon the foregoing authorities, we believe that genuine issues of material fact remain as to whether appellees acted in a wanton or reckless manner. The case at bar is more similar to Charles than toGoodin. Like Charles, in the case at bar conflicts exists as to whether the students received proper training regarding the use of the table saw. See, also, Cater (finding that a lack of proper training regarding a safety procedure creates factual question as to wanton or reckless behavior). Although Madden stated that he provided what he believed to be adequate training, appellant and his fellow students stated that they received little training. Unlike Goodin, the record does not unequivocally reveal that the students received extensive training regarding the use of the table saw.
Also like Charles, in the case at bar some evidence exists that the table saw was not properly maintained. Cornell stated that the blade was dull and appellant, Page, and Madden stated that the fencing was such that it was not always possible to get a straight cut. Moreover, the record reveals that Madden had been informed of the problems associated with the table saw.
Consequently, in light of the evidentiary materials presented in the case at bar, we find that genuine issues of material fact remain as to whether appellees acted wantonly or recklessly. We hasten to add that our function at this juncture of the proceeding is not to determine which party or evidence is more credible, or whether certain evidence should be believed or should be disregarded. Rather, our review is limited to the extent that we have determined that appellant has submitted sufficient evidence to create a genuine issue of material fact. Therefore, we agree with appellant that the trial court erred by determining that appellees are immune from liability.
Accordingly, based upon the foregoing reasons, we sustain appellant's sole assignment of error and reverse the trial court's judgment.
JUDGMENT ENTRY
It is ordered that the judgment be reversed and that appellant recover of appellees costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. Evans, J.: Concur in Judgment Opinion
[1] We note that the General Assembly had twice amended the Political Subdivision Tort Liability Act prior to the time appellant filed the complaint. See Am.Sub.H.B. No. 350 (Jan. 1, 1997); Am.Sub.H.B. No. 215 (June 30, 1997). In State ex rel. Ohio Academy of Trial Lawyers v.Sheward (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, the Ohio Supreme Court declared H.B. No. 350 unconstitutional, and in Stevens v. Ackman
(2001), 91 Ohio St.3d 182, 743 N.E.2d 901, paragraph two of the syllabus, the court held that to the extent Am.Sub.H.B. No. 215 attempted to amend provisions purportedly enacted by Am.Sub.H.B. 350, such amendments did not enact or reenact Am.Sub.H.B. 350. We therefore apply the statutes as written prior to the enactment of Am.Sub.H.B. 350.